# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **JARROD MOON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | CV No.:_____ |
| v. ) | |
| ) | |
| **JOHNS MANVILLE, INC.** ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT

**COMES NOW**, the Plaintiff, Jarrod Moon, and files this Complaint for discrimination based on disability in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, as amended by the ADA Amendments Act of 2008 ("ADAAA"), and violations of the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.* against Defendant Johns Manville, Inc. As grounds for his Complaint, Plaintiff shows this Court the following:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this cause of action pursuant to 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. § 12101 *et seq.* and 29 U.S.C. § § 2601 *et seq.*.

2. Plaintiff has fulfilled all conditions precedent to the brining of this action under the ADA. Plaintiff filed charges of discrimination with the United

States Equal Employment Opportunity Commission ("EEOC") on December 3, 2019. (EEOC Complaint attached as Exhibit 1). Plaintiff was issued a Notice of Right to Sue from the EEOC on August 14, 2020 (Notice of Right to Sue attached as Exhibit 2), and timely files this lawsuit within 90 days of receipt of said notice.

3. The Defendant Johns Manville, Inc., is located and/or doing business within this judicial district and division. This action is brought within the judicial district wherein the unlawful employment practices were committed, making venue proper under 28 U.S.C. § 1391(b).

## PARTIES

4. Plaintiff is a citizen of the United States and a resident of the state of Alabama. At all times material to this lawsuit, Plaintiff was over the age of nineteen (19) and employed by Defendant in this judicial district.

5. Defendant Johns Manville, Inc. is a foreign corporation incorporated in Delaware. Defendant regularly conducts business and employs workers within this judicial district and division. At all times material to this action, Defendant employed Plaintiff. Defendant is an entity subject to suit under the ADA and FMLA. Upon information and belief, Defendant collectively employs 500 or more individuals.

## FACTS

6. Johns Manville, Inc. ("Defendant" or "Company") manufactures energy-efficient building products and operates a thermoplastic polyolefin roofing facility in Scottsboro, Alabama.

7. In or around June 2018, plaintiff was hired by Defendant as a Plant Engineer and Maintenance Manager.

8. Plaintiff's job duties included supervising the production equipment maintenance program, plant capital development and implementation.

9. Plaintiff performed his job well and received a raise in January 2019.

10. Plaintiff suffers from a serious medical condition, Adrenal Insufficiency.

11. Adrenal insufficiency occurs when the adrenal glands do not make enough of the hormone cortisol. Adrenal insufficiency causes, among other things, weakness, dizziness, fatigue, dehydration, muscle weakness, and pain. During an adrenal crisis, plaintiff's symptoms are life threatening.

12. Plaintiff receives medical treatment for his condition.

13. Defendant was aware of plaintiff's condition and disability.

14. Prior to July 2019, plaintiff suffered from periodic flare-ups of his condition, which caused him to miss work.

15. Plaintiff normally worked 50-60 hours per week and would make up anytime he missed from work due to his condition.

16. Plaintiff was able to perform the essential job functions of his position.

17. Plaintiff continued to experience flare-ups of his condition and he was placed on short-term disability until beginning FMLA leave.

18. From July 10, 2019 to on or about September 6, 2019, plaintiff was on FMLA leave.

19. Plaintiff was in daily contact with the company's technical superintendent while he was on leave.

20. Plaintiff continued to perform work for the company while on FMLA leave.

21. While on FMLA, a human resource representative from the company approached plaintiff with a severance package offer.

22. Plaintiff declined the severance package.

23. Plaintiff was advised that if he did not take the severance package he would be placed on a performance improvement plan when he returned to work and ultimately terminated.

24. Plaintiff was released by his treating physician to return to work on September 6, 2019.

25. Plaintiff was fully capable of performing the essential job functions duties of his position as plant engineer and maintenance manager with or without reasonable accommodation.

26. Defendant did not allow plaintiff to return to work until on or about September 18, 2019.

27. Defendant refused to allow plaintiff to return to work in his previous position of Plant Engineer and Maintenance Manager.

28. Approximately one week before Defendant allowed plaintiff to return to work, plaintiff's job title was changed to Plant Engineer and many of his assignments and projects were given to other employees.

29. As of September 18, 2019, plaintiff was able to perform the essential job functions of the plant engineer and maintenance manager position.

30. Prior to September 2019, plaintiff had never received any discipline, counseling, or negative feedback.

31. After returning from FMLA leave, plaintiff was disciplined for poor performance and failure to complete safety training.

32. Plaintiff was singled out and targeted by the company because he has a disability.

33. Plaintiff was told by Technical Superintendent Terry Couch that he could wait to complete safety training. Plaintiff has completed all of his required safety training.

34. Plaintiff maintains that his job performance has always met expectations and he was able to perform the essential functions of his job.

35. Plaintiff maintains that his job performance actually improved after returning to work.

36. On or about November 5, 2019, plaintiff was terminated.

37. As a pretext for plaintiff's termination, defendant told plaintiff that his poor performance was the cause of his termination.

38. Plaintiff maintains that his job performance had improved, and he was able to perform the essential functions of his job.

39. Plaintiff maintains that any allegations of "poor performance" on his part are pretextual.

40. Plaintiff maintains that the company has a corporate culture of discrimination aimed towards employees with disabilities. Management employees have stated that individuals who take FMLA leave are "playing the system" and it is a "hoax." Several company employees who have taken FMLA leave have been terminated shortly after returning to work.

41. Defendant's true reason for terminating plaintiff, under a guise of a poor performance, was to terminate plaintiff on the basis of his disability.

42. Plaintiff was terminated on the basis of his disability and in retaliation for exercising his rights under the FMLA.

## COUNT ONE –DISABILITY DISCRIMINATION

43. Plaintiff incorporates the previously numbered paragraphs as if fully set out herein.

44. This is a claim to redress the unlawful employment practices of disability discrimination conducted by defendant's agents and employees and ratified by the defendant.

45. Plaintiff is protected from unlawful discrimination on the basis of disability pursuant to age discrimination practices pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.,* as amended by the ADA Amendments Act of 2008.

46. The plaintiff is a disabled person as defined by the ADA in that (a) he has a physical or mental impairment that substantially limits one or more of his major life activities; (b) he has a record of such impairment; and/or (c) he is regarded as having such an impairment.

47. Plaintiff was able to perform the essential functions of his job with Defendant with or without reasonable accommodation.

48. By reason of the acts or omission alleged in this Complaint, Defendant discriminated against Plaintiff on the basis of his disability, subjected him to adverse

treatment disparate from non-disabled employees, and materially altered the terms and conditions of his employment in violation of the ADA.

49. Defendant discriminated against Plaintiff on the basis of his disability in violation of the ADA.

50. Defendant subjected Plaintiff to unlawful discrimination on the basis of his disability by terminating his employment in violation of the ADA.

51. Defendant subjected Plaintiff to unlawful discrimination by failing to provide reasonable accommodation in violation of the ADA and/or by retaliating against Plaintiff because of his disability.

52. Defendant's articulated reasons for the termination is mere pretense.

53. Defendant discriminated against Plaintiff on the basis of his disability in violation of the ADA.

54. Defendant's actions directly and proximately caused the Plaintiff to suffer damages in an amount to be determined by a struck jury.

WHEREFORE, Plaintiff demands judgment against Defendant Johns Manville, Inc. for all nominal damages, compensatory damages, attorney's fees, costs, expenses, and punitive damages permitted by law in an amount to be determined by a struck jury, and such other additional relief as the Court deems equitable and appropriate.

## COUNT TWO –FMLA VIOLATIONS

55. Plaintiff incorporates the previously numbered paragraphs as if fully set out herein.

56. Plaintiff brings this count pursuant to the FMLA.

57. As set out above, plaintiff took leave that qualified for protection under the Family Medical Leave Act from July 10, 2019 to September 6, 2019.

58. When plaintiff returned from leave, he was treated differently. His job title was changed and many of his duties were reassigned to other employees.

59. Plaintiff was singled out and targeted by the company because he has had taken FMLA leave.

60. Approximately, one and half months after returning to work, plaintiff was terminated.

61. Defendant willfully violated the FMLA by terminating plaintiff's employment because the plaintiff took approved leave under the Act.

62. Defendant retaliated against Plaintiff for his exercise of rights under the FMLA by taking adverse employment actions that affected the terms, conditions, and privileges of plaintiff's employment.

63. Defendant's actions directly and proximately caused the Plaintiff to suffer damages in an amount to be determined by a struck jury.

WHEREFORE, Plaintiff demands judgment against Defendant Johns Manville, Inc. for all nominal damages, compensatory damages, attorney's fees,

costs, expenses, and punitive damages permitted by law in an amount to be determined by a struck jury, and such other additional relief as the Court deems equitable and appropriate.

                                                     Respectfully submitted,

/s/ Jay E. Emerson, Jr.
Jay E. Emerson, Jr.
Attorney for the Plaintiff
Higgs & Emerson
405 Franklin St.
Huntsville, AL 35801
(256)533-3251(phone)
(256)533-3265(fax)
higgs@higgsandemerson.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY.**

/s/
OF COUNSEL

**Copy Served Upon:**

Johns Manville, Inc.
c/o Prentice Hall Corporation System Inc

10

641 South Lawrence Street
Montgomery, AL 36104

11

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 420-2020-00692 |// and EEOC

State or local Agency, if any

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Jarrod Moon | | (b)(7)(C) 1 Line Redacted |

| Street Address | City, State and ZIP Code |
|---|---|
| (b)(7)(C) 1 Line Redacted | Albertville, AL 35950 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two are named, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| Johns Manville | Unknown | 256-575-8100 |

| Street Address | City, State and ZIP Code |
|---|---|
| 117 Lequire Drive | Scottsboro, AL 35768 |

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: Nov. 5, 2019   Latest:
☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

PLEASE SEE ATTACHED

RECEIVED
DEC - 5 2019
U.S. EEOC
Birmingham District Office

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

Date _____ Charging Party Signature _____

NOTARY — When necessary for State or Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT
Jarrod Moon

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)
12/3/19

**PLAINTIFF'S EXHIBIT 1**

## EEOC COMPLAINT

Before me personally appeared Jarrod Moon, who after being duly sworn did depose and say as follows:

I have personal knowledge of the facts contained in this EEOC Complaint. I was hired by Johns Manville on or about June 25, 2018. I was hired in a position that was known as Plant Engineer and Maintenance Manager at an annual salary of $94,000.00 per year.

Following my employment, I had a successful work experience and as a result, I received a raise of $6,000.00 at the end of the fiscal year of 2018.

Unfortunately, I developed a severe medical condition known as Adrenal Insufficiency and received medical care and attention for same.

Prior to July of 2019, there were occasions where I had an attack or a severe episode which required me to be taken from work to home. I was told directly by management that I couldn't be at work that way. These attacks were periodic, episodic and would occur without any forewarning.

Management stated that persons who took FMLA were just trying to get out of work.

As a result of my severe medical condition, I made a request for FMLA.

As a result of my medical condition, Adrenal Insufficiency, I was placed on short term disability on or about July 10, 2019. While on short term disability, I was contacted by an H. R. representative from Johns Manville. I was told at that time that the company wanted to provide me with a severance package which would have the affect of terminating my employment with the company. During that contact, I asked what would happen if I did not accept the severance package. I was told:

> "if you come back to work, they will place you on a PIP and get rid of you that way."

1

During that contact, I was told that I had until Friday of that week to make a decision and at that time, I should report to the plant and advise the company of my decision. At that time, I was extremely sick and could not drive myself to the plant. My father drove me to the plant and I told the representative that my job was too valuable to me; that I had a family to support; that I needed my insurance and I was not willing to accept a severance package.

Subsequently, I was released to return to work on September 6, 2019, however the Company did not permit or allow me to return to work until September 18, 2019 and did not pay me while I was off work at that time.

Upon my return to work, my job title and duties were changed. Most, if not all of my managerial responsibilities were transferred.

In addition, in consistent with the H. R. Representative's prior statement, O was immediately placed on a PIP. This means Performance Improvement Plan although prior to my sickness, I had not had any disciplinary or performance issues with the company.

I also noticed that the attitude and demeanor of management towards me changed dramatically upon my return to work. It seemed as if he couldn't do anything right and was not provided any meaningful work.

Although I was placed on a PIP for no valid reason, I performed all the job tasks assigned to me appropriately.

The H. R. Manager who offered me the severance package terminated my employment on or about November 5, 2019.

I believe I was terminated in violation of the American's with Disabilities Act, as I am a person with a severe medical condition who was capable of performing my job without accommodation and/or the company regarded me as a person with a serious medical condition and terminated me from my employment due to and on account of my medical condition.

In addition and in the alternative, I maintain that I was terminated in retaliation for pursuing FMLA status and rights under FMLA.

2

_____
JARROD MOON

Sworn to and subscribed before me on this the __3__ day of _December_, 2019.

_____
Notary Public

3

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

To: Jarrod Moon
Albertville, AL 35950

From: Birmingham District Office
Ridge Park Place
1130 22nd Street South
Birmingham, AL 35205

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 420-2020-00692 | MICHELE R. HARRIS, Investigator | (205) 651-7044 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_Bradley A. Brown_   FOR     AUG 1 4 2020

Enclosures(s)

BRADLEY A. ANDERSON,
District Director

(Date Mailed)

cc: JOHNS MANVILLE
c/o Thomas A. Davis, Esq.
Jackson Lewis, PC
800 Shades Creek Pkwy, Suite 870
Birmingham, AL 35209

Jay E. Emerson, Jr., Esq.
Higgs & Emerson
Attorneys at Law
405 Franklin Street
Huntsville, AL 35801



Enclosure with EEOC
Form 161 (11/16)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice *and* within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do *not* relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):

- **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
- In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions,** such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
- **Only one** major life activity need be substantially limited.
- With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
- An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active.**
- An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months.**

"Regarded as" coverage:
- An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
- "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
- The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
- A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.